40 So.3d 683 (2009)
KAPPA SIGMA FRATERNITY, Kappa Nu Chapter
v.
Ryan PRICE-WILLIAMS.
Kappa Sigma Fraternity, Kappa Nu Chapter
v.
Ryan Price-Williams.
1080662 and 1081134.
Supreme Court of Alabama.
December 18, 2009.
*685 William E. Pipkin, Jr., of Austill, Lewis & Pipkin, P.C., Mobile, for appellant.
Robert J. Hedge and Charles L. Miller, Jr., of Miller & Hedge, P.C., Mobile, for appellee.
LYONS, Justice.
In appeal no. 1080662, Kappa Sigma Fraternity, Kappa Nu Chapter ("the chapter"), appeals from a March 6, 2009, order of the Mobile Circuit Court that enforced an agreement between the chapter and Ryan Price-Williams settling Price-Williams's action against the chapter. Price-Williams has moved to dismiss that appeal on the basis that this Court lacks subject-matter jurisdiction of the appeal. In appeal no. 1081134, the chapter appeals from an April 16, 2009, order of the Mobile Circuit Court that enforced its March 6, 2009, order. We deny Price-Williams's motion to dismiss appeal no. 1080662, and we affirm the trial court's decisions in both appeals.

Factual Background and Procedural History
Price-Williams was not a member of the chapter but visited a party hosted by the *686 chapter on January 31, 2004. While at the party, Price-Williams was assaulted. The record does not disclose the precise nature of Price-Williams's injuries, but it is undisputed that he sustained significant, permanent injuries as a result of the assault.
On November 28, 2005, Price-Williams sued Kappa Sigma National Fraternity ("the national fraternity"), the chapter, and Gabriel Kevin Dean, Charles Brandon Baber, and Michael Taylor Howard, two of whom were members of the chapter.[1] The complaint alleged that Dean, Baber, and Howard had perpetrated the assault and that they had done so as agents of the national fraternity and of the chapter. The first count of the complaint sought recovery from the individual defendants based on the assault and from the national fraternity and the chapter based on a theory of vicarious liability arising from the assault. The second count of the complaint sought recovery from all the defendants, alleging that they had negligently and/or wantonly hosted the party. The third count of the complaint sought recovery from the national fraternity and from the chapter, alleging that they had negligently and/or wantonly failed to create, implement, and follow rules and regulations that would have prevented the assault.
The national fraternity and the chapter were represented by the same counsel. Although the record does not show when, the parties agree that the trial court entered a summary judgment in favor of the national fraternity on all counts. The individual defendants never answered the complaint or otherwise appeared in the action. Counsel for the chapter did not represent the individual defendants. The trial court entered a default judgment against the individual defendants on May 10, 2007, but it did not determine the amount of damages to be awarded. As to liability, the chapter was the sole remaining defendant.
The action was tried to a jury beginning on November 17, 2008. After closing arguments on November 20, 2008, but before the jury was charged, Price-Williams and the chapter entered into a confidential settlement agreement. The agreement was not reduced to a writing but was stated before the trial court by counsel for Price-Williams and counsel for the chapter. The record includes the following transcript of their statements:
"[Price-Williams's counsel]: Judge, the parties, or at least [Price-Williams] and the [chapter], have reached a settlement. It's confidential. Of course we'll advise the court. The [chapter] has agreed to pay ... to settle their [sic] liability, with the remaining liability an amount to be determined by the court.
"[The trial court]: Okay. And you will submit to me a proposed order with the appropriate findings?
". . . .
"[The chapter's counsel]: We'll do a joint stipulation and a proposed order.
". . . .
"[The trial court]: And as far as I am concerned, y'all are free to go, and I will just tell the jury that you shook hands and left and there's nothing else for them to do.
"[Price-Williams's counsel]: Uh-huh. That we resolved our differences and without them it would have never gotten resolved.
"[Price-Williams's counsel]: And, Judge, as the Court is aware, we had conceded that the [national fraternity] was not liable at summary judgment stage. Because there is still hanging *687 out there the individuals for a short period of time, [the chapter's counsel] needs aI would assume a [Rule] 54(b)[, Ala. R. Civ. P.,] order or
"[The chapter's counsel]: That, or that, or perhaps we could simply include it in the release
"[Price-Williams's counsel]: That will be
"[The chapter's counsel]: the national fraternity
"[Price-Williams's counsel]: That will be fine.
"[The chapter's counsel]: All I am interested in is
"[Price-Williams's counsel]: Finality.
"[The chapter's counsel]: between you, your client and
"[Price-Williams's counsel]: The fraternity.
"[The chapter's counsel]: my clients.
"[Price-Williams's counsel]: That's right. Fraternities. That's right.
"[The chapter's counsel]: So that we're
"[Price-Williams's counsel]: We'll include that into the release.
"[The trial court]: Okay.
"[The chapter's counsel]: And that ought tothat ought toand then I may come to the court with regard to some sort of a [Rule] 54(b) arrangement.
"[The trial court]: That's fine."
The trial court then dismissed the jury.
Subsequently, a disagreement arose between Price-Williams and the chapter regarding the terms of the settlement. Price-Williams argued that he intended to release only the national fraternity and the chapter, not the individual defendantseither as individuals or as agents of the chapter. The chapter argued that the settlement agreement included a release of the national fraternity, the chapter, and the individual defendants in their capacities as agents of the chapter. The chapter contended that the only claims Price-Williams had reserved were claims against the individual defendants in their individual capacities. On December 23, 2008, Price-Williams and the chapter each filed a motion to enforce the settlement agreement according to those respective interpretations.
On January 5, 2009, before the trial court ruled on the parties' motions to enforce the settlement agreement, it entered an order assessing damages against the individual defendants. The trial court made detailed findings of fact regarding the events underlying Price-Williams's claims and the liability of the individual defendants. Regarding the first count of the complaint, it concluded that each of the individual defendants had acted negligently and wantonly with respect to the assault. The trial court determined that Howard was not a member of the chapter but that Dean and Baber were members and officers of the chapter and that they "were responsible for maintaining order at the fraternity house through the implementation and enforcement of an appropriate risk management program" for the chapter. Dean and Baber held those duties on the night of the party at which Price-Williams was assaulted. Regarding the second and third counts of the complaint, the trial court held that Dean and Baber, in hosting the party and failing to create, implement, and follow rules and regulations that would have prevented the assault, acted negligently and wantonly and were liable to Price-Williams. Based on its findings, the trial court awarded Price-Williams $500,000 in compensatory damages and $750,000 in punitive damages against the individual defendants. The trial court noted:

*688 "The total amount of the verdict is therefore $1,250,000. It is the intention of this court that the verdict represents the total damages to be awarded [Price-Williams] for all damage[] suffered by him as a result of [the assault] and that the individual defendants are entitled to a setoff of the amount paid to [Price-Williams] by [the chapter] as a result of the confidential pro tanto settlement."
On January 14, 2009, the chapter responded to Price-Williams's motion to enforce the settlement agreement and supplemented its own motion. Price-Williams then responded to the chapter's supplement. On January 30, 2009, the chapter moved, under Rule 59(e), Ala. R. Civ. P., to alter, amend, or vacate the trial court's January 5, 2009, judgment assessing damages against the individual defendants.
In its Rule 59 motion, the chapter argued that in the January 5, 2009, judgment the trial court had authority only to determine the amount of damages and that it had improperly made determinations regarding liability; had improperly entered judgments against the individual defendants with respect to the third count of the complaint, which had been stated only against the national fraternity and the chapter; and had improperly made determinations regarding the existence of an agency relationship between Dean and Baber and the chapter. Price-Williams moved to strike the chapter's Rule 59 motion, arguing that the chapter lacked standing because the judgment was against only the individual defendants and counsel for the chapter did not represent the individual defendants.
At a February 6, 2009, hearing on the motions to enforce the settlement agreement, the trial court denied the chapter's motion to alter, amend, or vacate the judgment assessing damages against the individual defendants. In discussing the terms of the settlement agreement with counsel, the trial court noted that if the chapter was concerned with fully protecting itself, the release could include language releasing the chapter and its agents. Price-Williams's counsel explained his position that the chapter's concern was with vicarious liability and that a broader release of the chapter's "agents" would affect Price-Williams's ability to recover from a liability-insurance carrier based on coverage of two of the individual defendants arising from their acts as agents of the national fraternity or of the chapter. Subsequently, the trial court concluded that the release would satisfy the settlement agreement if it stated that Price-Williams released all claims against the chapter based on vicarious liability. The chapter's counsel requested that the trial court order that the word "agents" be included in the release because, he argued, anything less would not fully protect the chapter. The trial court declined, reasoning that the chapter would be fully protected by a release of all vicarious liability and that counsel for the chapter had no basis for asking for relief for the individual defendants because they were not his clients. The trial court then ordered that the parties exchange a release and the settlement funds within 30 days.
On March 6, 2009, the trial court entered a written order, finding as follows:
"[T]he settlement of record as stated in open court on November 20, 2008, relieved the ... chapter, from all liability, including any liability that may be asserted against it based upon any vicarious liability theories, relating to [Price-Williams's] claims against it in this lawsuit. This court further finds that [Price-Williams's] claims against the individuals as alleged in the Complaint, including the capacities asserted therein, *689 were reserved and excluded from the settlement."
The trial court granted Price-Williams's motion to enforce the settlement agreement and denied the chapter's motion. The trial court ordered Price-Williams to execute a release compliant with the court's findings and ordered the chapter to "tender the settlement proceeds to [Price-Williams's] counsel on or before March 9, 2009." The trial court further stated: "Upon the consummation of the settlement... this matter will be deemed dismissed with prejudice, each party to bear its own cost."
On March 9, 2009, the chapter filed a notice of appeal to this Court. That appeal was docketed as appeal no. 1080662.[2] The chapter did not pay the settlement proceeds to Price-Williams as ordered by the March 6, 2009, order. Nor did the chapter at that time move to alter, amend, or vacate the March 6, 2009, order under Rule 59, Ala. R. Civ. P., or request a stay of the order under Rule 62, Ala. R. Civ. P.
On March 10, 2009, Price-Williams moved the trial court to find the chapter in civil contempt under Rule 70A, Ala. R. Civ. P., and to impose sanctions for its failure to pay the settlement proceeds as required by the March 6, 2009, order. On March 11, 2009, the chapter responded to Price-Williams's motion and moved to stay the proceedings in the trial court pending a resolution of appeal no. 1080662.
At a hearing on Price-Williams's and the chapter's motions on April 16, 2009, the trial court denied the chapter's motion to stay. The trial court ordered the chapter to comply with the March 6, 2009, order and to pay the settlement proceeds to Price-Williams within 24 hours. At a hearing on the following day, April 17, 2009, the chapter orally renewed its motion to stay the proceedings. The trial court again denied the motion and ordered the chapter to comply with the April 16, 2009, order or to face sanctions. The transcript of that hearing shows that counsel for the chapter complied, stating: "I wish and intend to maintain ... my client's rights to pursue the issues that have been raised on appeal, and don't intend to waive those rights or agree to satisfaction of the order ... of this Court that this payment is being tendered." The chapter filed a notice of appeal of the April 16, 2009, order on May 27, 2009. That appeal was docketed as appeal no. 1081134.

Analysis

I. Price-Williams's Motion to Dismiss Appeal No. 1080662

In Price-Williams's motion to dismiss appeal no. 1080662, he argues that this Court lacks subject-matter jurisdiction because, he says, the appeal is not from a final judgment. Price-Williams contends that the trial court, in its March 6, 2009, order, expressly retained jurisdiction until the settlement agreement was consummated. Because the chapter failed to pay the settlement proceeds before it filed its notice of appeal, Price-Williams contends that the March 6, 2009, order never became final and that the trial court never lost jurisdiction. The chapter responds, arguing that, because the March 6, 2009, order resolved all issues between the remaining parties, it was a final, appealable judgment.
This Court has jurisdiction to consider appeal no. 1080662 even if the March 6, 2009, order was not a final judgment. Rule 4(a)(1)(A), Ala. R.App. P., expressly *690 contemplates appeals from orders "granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction." "An injunction is defined as `[a] court order commanding or preventing an action.' Black's Law Dictionary 788 (7th ed.1999)." Dawkins v. Walker, 794 So.2d 333, 335 (Ala.2001). The trial court's March 6, 2009, order commanded the chapter to take specific actionto pay the settlement proceeds to Price-Williams by March 9, 2009. Because the March 6, 2009, order commands the chapter to take action, we conclude that it is injunctive in nature. See Dawkins, 794 So.2d at 335. "An appeal may be taken from `any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction.' Rule 4(a)(1)(A), Ala. R.App. P." Watson v. Watson, 910 So.2d 765, 768 (Ala. 2005).[3]
Justice Murdock's opinion concurring in the rationale in part and concurring in the result relies on the several cases for the proposition that all rulings enforcing a settlement are appealable as final judgments. In Cincinnati Insurance Cos. v. Barber Insulation, Inc., 946 So.2d 441, 449 (Ala. 2006), however, there is no indication that the trial court entered an order, as in this case, compelling compliance and declining to dismiss the action. The same can be said of Jones v. Stedman, 595 So.2d 1355 (Ala.1992), and Phillips v. Knight, 559 So.2d 564 (Ala.1990). Contractor Success Group, Inc. v. Service Thrust Organization, Inc., 681 So.2d 212 (Ala.Civ.App. 1996), another case cited by Justice Murdock, is more analogous to this case; the trial court there entered an order holding a settlement agreement to be valid and enforceable and ordering the parties to execute the agreement and to comply with it. However, the issue of appealability is not discussed. Mays v. Julian LeCraw & Co., 807 So.2d 551, 554 (Ala.Civ.App.2001), involved an appeal from an order entering a summary judgment and refusing to enforce a settlement agreement. Nero v. Chastang, 358 So.2d 740, 743 (Ala.Civ.App. 1978), involved an appeal from an order granting a motion to dismiss based on an alleged settlement agreement.
Justice Murdock's opinion also relies upon this Court's ruling in the initial appeal by Ingram in Ingram v. Pollock, 557 So.2d 1199, 1199 (Ala. 1989), in which the trial court had upheld a settlement and had stated that, upon notice of consummation of the settlement, the trial court would dismiss the action without prejudice. Of course, a different situation is presented here in that the trial court ordered the chapter to make payment by a date certain as opposed to merely withholding entry of an order dismissing the action until notice that consummation of the settlement had taken place. In Ingram this Court noted that in the former appeal it had initially remanded the cause for the entry of a final appealable order but that, before the trial court could act upon the remand order, "this Court reconsidered its ruling and held that the order appealed from was final and that the time for filing a postjudgment motion or an appeal" had run. *691 557 So.2d at 1199. This Court further noted that the order of dismissal was without prejudice to the filing of a motion for relief from the judgment pursuant to Rule 60, Ala. R. Civ. P., or any other appropriate postjudgment motion. In Ingram this Court did not offer any analysis to justify its ruling that the trial court's order was a final judgment.
After the dismissal of his initial appeal, Ingram filed a Rule 60 motion, which the trial court denied. When Ingram filed an appeal from the denial of the Rule 60 motion, the problem of permitting a Rule 60 motion to serve as a substitute for an appeal was disposed of with the statement that under "under the peculiar circumstances of this case, the Rule 60(b) grounds provide a valid basis for review of the substantive grounds for relief as requested." 557 So.2d at 1200. The peculiar circumstances consisted of two continuances of the hearing on the motion challenging the order enforcing the settlement, one occasioned by illness of the trial judge and another by a scheduling conflict of movant's counsel. No authority is cited that would prevent the applicability of Rule 59.1, Ala. R. Civ. P., under such circumstances if the order in Ingram were indeed a final judgment. Of course, had the Court stood by its initial ruling in the former appeal, the movant would not have been relegated to reliance upon Rule 60, and the dubious procedural ruling in Ingram would not have been necessary. Consequently, at most, the ruling in the former appeal referred to in Ingram constitutes no more than physical precedent and is not an adjudication of the status of the order at issue in Ingram as a final judgment. Moreover, even it does constitute an adjudication on the merits of the issue of finality of the trial court's order enforcing the settlement, the facts of Ingramwhere the trial court merely imposed a negative restraint as opposed to a mandatory injunctionare clearly distinguishable from the trial court's action in the instant case.
Because we conclude that the trial court's March 6, 2009, order was injunctive in nature and, therefore, that an appeal may be taken from it on that basis, we deny Price-Williams's motion to dismiss appeal no. 1080662.

II. Appeal No. 1081134

On April 16, 2009, the trial court ordered the chapter to comply with the court's March 6, 2009, order by paying the settlement proceeds to Price-Williams within 24 hours. The chapter did so but then appealed the trial court's April 16, 2009, order. In appeal no. 1081134, the chapter argues that the trial court lacked jurisdiction to enter the April 16, 2009, order and asks this Court to instruct Price-Williams to return the settlement proceeds pending the outcome of appeal no. 1080662. Specifically, the chapter argues that the trial court lost jurisdiction over matters pertaining to the March 6, 2009, order once the chapter had filed a notice of appeal of that order. Price-Williams contends that the trial court retained jurisdiction to enter the April 16, 2009, order, because, he argues, that order was collateral to the March 6, 2009, order.
Because the March 6, 2009, order was an injunction requiring performance of a specific act, we need not determine whether the April 16, 2009, order was collateral to appeal no. 1080662. An appeal of an order imposing an injunction does not divest the trial court of jurisdiction to enforce its order if that order is not stayed pending appeal. See, e.g., Rule 62(a), Ala. R. Civ. P. ("Unless otherwise ordered by the court, an interlocutory order or final judgment in an action for an injunction ... shall not be stayed during the period after *692 its entry and until an appeal is taken or during the pendency of an appeal."). See also Union Oil Co. of California v. Leavell, 220 F.3d 562, 565-66 (7th Cir.2000) ("A notice of appeal does not stay enforcement of a district court's order.... A judge mayand shouldenforce an unstayed injunction while an appeal proceeds.... Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 16 Federal Practice and Procedure § 3921.2 (2d ed.1996). Otherwise, the judge deprives the prevailing parties of the benefit of their judgment and rewards defiance. A notice of appeal `divests the district court of its control over those aspects of the case involved in the appeal.' Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982)(emphasis added), but whether the addressee of an injunction has complied is not a subject `involved in the appeal.'"). Accordingly, the pendency of appeal no. 1080662 did not divest the trial court of jurisdiction to enforce its March 6, 2009, order.
The chapter argues that the trial court's requirement that it comply with the March 6, 2009, order within 24 hours of the entry of its April 16, 2009, order left it without the ability to obtain a stay. However, the chapter never sought a stay from the trial court within the 24-hour period after entry of its order of April 16, 2009. Had it done so and had the order been denied, the chapter could have then sought a stay of very limited duration from the trial court pending emergency appellate procedures. See, e.g., Rule 21(c) and (e)(4), Ala. R.App. P. (allowing a party to apply for an extraordinary writ where the "party seeks emergency and immediate appellate review"); Rule 27, Ala. R.App. P (allowing a party to file a motion with the appellate court). Accordingly, we cannot agree that the chapter lacked the means to obtain a stay of the trial court's March 6, 2009, order.

III. Appeal No. 1080662

The chapter also contends that the trial court erred in denying its motion to alter, amend, or vacate the trial court's January 5, 2009, judgment assessing damages against the individual defendants.

A. The March 6, 2009, Order Regarding the Settlement Agreement

In appeal no. 1080662, the chapter raises several arguments relative to the trial court's interpretation of the settlement agreement and its March 6, 2009, order requiring the chapter to comply with that interpretation. We have already determined that the March 6, 2009, order was injunctive in nature. "[A] permanent injunction is reviewed de novo." TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1241-42 (Ala.1999), overruled on other grounds by Holiday Isle, LLC v. Adkins, 12 So.3d 1173, 1176 (Ala.2008). "Nevertheless, this Court has noted that a trial court's consideration of ore tenus testimony has a bearing upon the standard of review we apply to the entry of a permanent injunction." Classroomdirect.com, LLC v. Draphix, LLC, 992 So.2d 692, 701 (Ala.2008).
"`Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment.'

*693 "American Petroleum Equip. & Constr., Inc. v. Fancher, 708 So.2d 129, 132 (Ala. 1997) (citations omitted)."
Collins v. Rodgers, 938 So.2d 379, 384 (Ala. 2006). The trial court based its decision regarding the settlement agreement on the representations of counsel regarding the agreement at the November 20, 2008, hearing. "`[A]ttorneys are officers of the court and "`when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.'"'" Molton v. State, 651 So.2d 663, 670 n. 6 (Ala.Crim.App.1994) (quoting Holloway v. Arkansas, 435 U.S. 475, 486, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)); see also Ex parte Owen, 860 So.2d 877, 880 (Ala.2003) (citing Molton). Accordingly, we will review with a presumption of correctness those portions of the trial court's decision based on the representations of counsel made at the November 20, 2008, hearing.
The gravamen of the chapter's arguments is that the settlement agreement encompassed all claims against the chapter and that a claim against any of the individuals as agents of the chapter is, in essence, a claim against the chapter, thus defeating the purpose of the settlement agreement. Price-Williams argues that the chapter is fully protected by Price-Williams's release of all claims against it based on theories of vicarious liability and, thus, that the settlement agreement is satisfied. Price-Williams also argues that he expressly reserved his rights against the individual defendants in their capacities as individuals and as agents of the chapter.
The transcript of the November 20, 2008, hearing is limited at best. It is apparent that Price-Williams and the chapter agreed to settle the claims between them. Price-Williams's counsel stated that the individual defendants were "still hanging out there" and that the amount of the "remaining liability" after the settlement would be determined by the trial court. However, neither Price-Williams nor the chapter stated that the settlement would include Price-Williams's claims against any of the individual defendants as agents of the chapter. Moreover, during the colloquy, counsel for the chapter expressed his interest in including in the release the national fraternity, which had already prevailed on summary judgment, and in obtaining finality for his "clients." Counsel for Price-Williams immediately responded, "That's right. Fraternities. That's right." Counsel for the chapter made no subsequent statement to contradict or expand the scope of the contemplated release as including only the national fraternity and the chapter.
At its hearing on the parties' motions to enforce the settlement agreement held on February 6, 2009, the trial court correctly noted that counsel for the chapter did not represent the individual defendants and that counsel therefore had no basis on which to argue on behalf of the individual defendants. The trial court also correctly concluded that a release by Price-Williams of all claims against the chapter, including all claims based on theories of vicarious liability, would fully protect the chapter from liability-even liability arising from actions of the individual defendants to the extent they are agents of the chapter. In light of the colloquy that took place on November 20, 2008, we conclude that the trial court's interpretation of the settlement agreement was not clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.[4]

*694 B. The Trial Court's Denial of the Rule 59(e) Motion

In appeal no. 1080662, the chapter also contends that the trial court erred in denying its Rule 59(e) motion to alter, amend, or vacate the trial court's January 5, 2009, judgment against the individual defendants. "Whether to grant relief under Rule 59(e), Ala. R. Civ. P., is within the trial court's discretion." Bradley v. Town of Argo, 2 So.3d 819, 823 (Ala.2008). However, when the facts are undisputed and the "`ruling [is] a reconsideration of a question of law, ... the standard of review is de novo.'" 2 So.3d at 824 (quoting Pioneer Natural Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l Union Local 4-487, 328 F.3d 818, 820 (5th Cir.2003), applying the analogous Rule 59(e), Fed. R.Civ.P.).
The chapter argues that in the January 5, 2009, judgment, the trial court improperly made findings regarding liability when it needed only to assess the amount of damages. Price-Williams correctly argues that because the January 5, 2009, judgment was entered against only the individual defendants, the chapter has no standing to challenge the judgment. This Court has stated: "Only a party prejudiced or aggrieved by a judgment can appeal.... `A party cannot claim error where no adverse ruling is made against him.'" Alcazar Shrine Temple v. Montgomery County Sheriff's Dep't, 868 So.2d 1093, 1094 (Ala.2003)(quoting Holloway v. Robertson, 500 So.2d 1056, 1059 (Ala. 1986)). The trial court's January 5, 2009, judgment was entered against only the individual defendants and was not expressly adverse to the interests of the chapter.
However, the chapter argues that the January 5, 2009, judgment adversely affected its interests because the trial court determined that, as agents of the chapter, Dean and Baber had negligently and wantonly failed to create, implement, and follow rules and regulations that would have prevented the assault. The chapter correctly notes that the third count of the complaint was asserted only against the national fraternity and the chapter. Assuming that adverse collateral effects of an order against another party gives the chapter standing to review that order, and the chapter has given us no authority for such proposition, the insulation of the chapter under the settlement agreement from liability for the acts of the agents makes any error harmless as to the chapter.

Conclusion
Based on the foregoing, we deny Price-Williams's motion to dismiss appeal no. 1080662, and we affirm the trial court's March 6, 2009, order. As to appeal no. 1081134, we affirm the trial court's April 16, 2009, order.
1080662MOTION TO DISMISS DENIED; AFFIRMED.
COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in the rationale in part and concurs in the result.
1081134AFFIRMED.
COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in the rationale in part and concurs in the result.
*695 MURDOCK, Justice (concurring in the rationale in part and concurring in the result).
I concur in the result, but I respectfully disagree with two aspects of the majority's analysis.
First, in Holiday Isle, LLC v. Adkins, 12 So.3d 1173, 1176 (Ala.2008), this Court stated:
"We find the rule applied by the United States Supreme Court in similar situations to be persuasive: `We review the District Court's legal rulings de novo and its ultimate decision to issue the preliminary injunction for abuse of discretion.' Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 428, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006); see also Justice Murdock's special writing while sitting as a judge on the Court of Civil Appeals in City of Dothan v. Eighty-Four West, Inc., 871 So.2d 54, 60 (Ala.Civ.App.2003) (Murdock, J., concurring specially on application for rehearing) (cited with approval in McGlathery v. Richardson, 944 So.2d 968, 970 (Ala.Civ.App.2006)). To the extent they conflict with our holding today, previous expressions such as the one found in TFT, Inc. v. Warning Systems, Inc., 751 So.2d 1238, 1241-42 (Ala.1999) (`The applicable standard of review [of injunctive relief] depends on whether the trial court entered a preliminary injunction or a permanent injunction. A preliminary injunction is reviewed under an abuse-of-discretion standard, whereas a permanent injunction is reviewed de novo.') are hereby overruled."
Based on the rationale reflected and the authorities cited in this discussion in Holiday Isle and in the legal analysis that follows the citation to TFT, Inc. v. Warning Systems, Inc., 751 So.2d 1238 (Ala. 1999), in the main opinion here, I see no reason to continue repeating, and I believe we should disavow, the one-size-fits-all rule from TFT that "`a permanent injunction is reviewed de novo.'" 40 So.3d at 692.
I also respectfully disagree with the notion expressed in the main opinion that the trial court's March 6, 2009, order granting Ryan Price-Williams's motion to enforce the settlement is an injunction. The majority appears to find it necessary to make this determination because it is hesitant to conclude that the appeal by Kappa Sigma Fraternity, Kappa Nu Chapter ("the chapter"), of the March 6, 2009, order is an appeal from a final judgment. I conclude that this hesitancy is unfounded and that the March 6, 2009, order of the trial court is not properly viewed as an injunction.
First, previous cases before this Court and the Court of Civil Appeals provide substantial physical precedent for the principle that rulings on motions to enforce a settlement agreement are appealable. See generally Cincinnati Ins. Cos. v. Barber Insulation, Inc., 946 So.2d 441, 449 (Ala. 2006) (addressing on its merits the appeal of an order enforcing a settlement agreement); Jones v. Stedman, 595 So.2d 1355 (Ala.1992) (affirming a trial court's enforcement of a settlement of a will contest); Phillips v. Knight, 559 So.2d 564 (Ala. 1990) (addressing on its merits the appeal of an order enforcing a settlement agreement); Contractor Success Group, Inc. v. Service Thrust Org., Inc., 681 So.2d 212, 214 (Ala.Civ.App.1996) (considering on its merits the appeal of a trial court's "order holding the settlement agreement to be valid and enforceable and ordering that the parties execute the agreement and comply with it" (emphasis added)).
None of the cases involving an appeal of a trial court's ruling enforcing a settlement agreement indicates that such a ruling implicates a trial court's injunctive power or that such a ruling is interlocutory in nature. Instead, these cases are consistent with the principle that "`[a] settlement *696 agreement once entered into cannot be repudiated by either party and will be summarily enforced.'" Mays v. Julian LeCraw & Co., 807 So.2d 551, 554 (Ala.Civ. App.2001) (quoting Nero v. Chastang, 358 So.2d 740, 743 (Ala.Civ.App.1978)). In summarily enforcing such a settlement agreement, a trial court exercises inherent power to do so based on the fact that the agreement has been made before the court. See generally § 34-3-21, Ala.Code 1975;[5] Rule 47, Ala. R.App. P.[6]
If this were not the case, but instead, as the main opinion suggests, such an order is properly viewed as an injunction, the order could be procured only upon proof of the four elements necessary for such equitable relief. Specifically,
"[t]o be entitled to a permanent injunction, a plaintiff must demonstrate [1] success on the merits, [2] a substantial threat of irreparable injury if the injunction is not granted, [3] that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and [4] that granting the injunction will not disserve the public interest."
TFT, 751 So.2d at 1242 (citations omitted), overruled on other grounds, Holiday Isle, 12 So.3d at 1176. I cannot conclude that this is the law. In short, a trial court's order summarily enforcing a settlement agreement reached in a case pending before it is not an "injunction."[7]
Accordingly, I also submit that the majority is incorrect in note 3 of its opinion to fault the chapter for failing to argue on appeal "the impropriety of injunctive relief based on the adequacy of a remedy at law." 40 So.3d at 690. Before this Court's decision today, the chapter was not fairly on notice that the trial court's order constituted an "injunction"; the trial court did not discuss the elements of an injunction in its order, and neither party made any arguments concerning such elements before the trial court. Consequently, it comes as no surprise that the chapter did not argue on appeal that the trial court should not have entered injunctive relief, per se.
The trial court's order requiring the chapter to execute the settlement agreement and to pay the settlement proceeds was simply part of its enforcement of the settlement agreement. The fact that the trial court ordered that the proceeds be paid by March 9, 2009three days after it *697 entered its order enforcing the settlementand that the order stated that "[u]pon the consummation of the settlement... this matter will be deemed dismissed with prejudice" did not transform its enforcement order into an injunction. A similar disposition occurred in Ingram v. Pollock, 557 So.2d 1199 (Ala.1989), yet the Court there did not question the finality of order appealed or indicate that the order was in the nature of an injunction.
In Ingram, the trial court had entered an order to enforce a settlement agreement and had stated, in language similar to the order in the present case, that upon notice that "`the settlement has been consummated,... the court [would] then dismiss the case with prejudice.'" 557 So.2d at 1200 (emphasis added). The plaintiff filed a Rule 59(e), Ala. R. Civ. P., motion, which was not ruled upon within 90 days. In concluding that the attempt to appeal following the expiration of the 90 days was untimely, this Court "held that the order appealed from was final and that the time for filing a postjudgment motion or an appeal" had run. 557 So.2d at 1199.
"A final judgment is an order `that conclusively determines the issues before the court and ascertains and declares the rights of the parties involved.' Bean v. Craig, 557 So.2d 1249, 1253 (Ala. 1990)." Lunceford v. Monumental Life Ins. Co., 641 So.2d 244, 246 (Ala.1994). The determination whether a judgment is final does not depend on the title of the order; "rather, the test of a judgment's finality is whether it sufficiently ascertains and declares the rights of the parties." Ex parte DCH Reg'l Med. Ctr., 571 So.2d 1162, 1164 (Ala.Civ.App.1990) (emphasis added) (citing McCulloch v. Roberts, 290 Ala. 303, 276 So.2d 425 (1973)). In McCulloch, the Court explained as follows:
"In Ex parte Elyton Land Co., 104 Ala. 88, 91, 15 So. 939 (1893), this court held that:
"`... The test of the finality of a decree to support an appeal is not whether the cause remains in fieri, in some respects, in the court of chancery, awaiting further proceedings necessary to entitle the parties to the full measure of the rights it has been declared they have; but whether the decree which has been rendered, ascertains and declares these rightsif these are ascertained and adjudged, the decree is final, and will support an appeal....'
"Likewise, in Carter v. Mitchell, 225 Ala. 287, 293, 142 So. 514[, 519] (1932), the rule was stated as follows:
"`The test of the finality of a decree sufficient to support an appeal is that it ascertains and declares the rights of the parties and settles the equities, and is not controlled by the fact that the cause remains in fieri in respect to other matters. [Citation omitted]'
"In Adams v. Sayre, 76 Ala. 509, 518 (1884), it was held that:
"`No general rule can probably be stated, which would define accurately, for all possible emergencies, what constitutes the equities of every case. These equities embrace the substantial merits of the controversythe material issues of fact and law litigated or necessarily involved in the cause, which determine the legal rights of the parties, and the principles by which such rights are to be worked out ....'
". . . .
"In Sexton v. Sexton, 280 Ala. 479, 482, 195 So.2d 531, 533 (1967), the rule was stated that:
"`Equity decrees may be partly final and partly interlocutory. A decree which ascertains and declares the rights of the parties and settles the equities is a final decree, although it provides for further proceedings under *698 the direction of the court in order to make the final decree effective, such decree is interlocutory and remains within the control of the court because as to such decree and further proceedings thereunder the cause remains in fieri. [Citations omitted]'
"See also Newton v. Ware, 271 Ala. 444, 124 So.2d 664 (1960), and Ex parte Sparks, 254 Ala. 595, 49 So.2d 296 (1950)."
290 Ala. at 305-06, 276 So.2d at 426-27 (emphasis added).
The trial court's March 6, 2009, order settled the issues between the parties and was a final judgment. The fact that the chapter had not paid the settlement proceeds to Price-Williams does not change that there was "`nothing for further adjudication'" before the matter could be heard on appeal. James v. Rane, 8 So.3d 286, 287 (Ala.2008) (quoting Cates v. Bush, 293 Ala. 535, 537, 307 So.2d 6, 8 (1975)). It is because the chapter appealed from an appealable, final judgment that I conclude that Price-Williams's motion to dismiss is without merit.
NOTES
[1] Dean and Baber were members and officers of the chapter; Howard was not a member.
[2] On March 5, 2009, the chapter filed a petition for a writ of mandamus, which this Court denied on April 7, 2009 (case no. 1080649).
[3] We note that a proceeding to enforce a settlement is in the nature of an action on a contract that leads to the entry of a money judgment. In this action, the trial court instead enforced the parties' settlement agreement by way of an injunction. However, the chapter has not argued on appeal the impropriety of injunctive relief based on the adequacy of a remedy at law. United Servs. Auto. Ass'n v. Allen, 519 So.2d 506, 508 (Ala. 1988) ("An injunction is to be issued only to prevent substantial injury where no adequate remedy at law is available...."). Accordingly, for purposes of this appeal, we assume, without deciding, the propriety of injunctive relief under the circumstances here presented.
[4] The chapter argues that, in reaching its conclusion as to the import of the settlement agreement, the trial court impermissibly considered parol evidence regarding Price-Williams's plans to recover against a liability-insurance carrier. The remarks made during the colloquy constitute adequate and independent grounds to support the enforcement of the settlement agreement.
[5] Section 34-3-21, Ala.Code 1975, provides: "An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court."
[6] Rule 47, Ala. R.App. P., provides:

"No private agreement or consent between the parties or their attorneys, relating to the proceedings in any cause, shall be alleged or suggested by either against the other, unless the same be in writing, and signed by the party to be bound thereby; provided, however, agreements made in open court or at pretrial conferences are binding, whether such agreements are oral or written."
[7] See also Cupps v. Cupps, 675 So.2d 889 (Ala.Civ.App.1996). In Cupps, the Court of Civil Appeals held that the trial court was not required to comply with Rule 65(d)(2), Ala. R. Civ. P., which requires that an order granting an injunction set forth the reasons for its issuance. The court reasoned that the wife was seeking a remedy for her husband's failure to comply with a final divorce judgment, which incorporated a settlement agreement giving the wife an equitable lien and requiring the husband to pay all alimony in gross by a specified date. The Court of Civil Appeals reasoned that "the trial court in issuing its order [requiring the use of certain funds to satisfy the lien] acted within Rule 70, Ala. R. Civ. P., which recognizes the trial court's authority to use its inherent power to enforce a settlement agreement approved by that court." 675 So.2d at 891.